UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRY WALLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:15CV00586 AGF |
| | ) |
| BLAST FITNESS GROUP, LLC; | ) |
| BLAST FITNESS GROUP PERSONAL | ) |
| TRAINING, LLC; BLAST FITNESS | ) |
| ACQUISITION, LLC; and EDGAR A. | ) |
| THOMPSON II, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Currently before the Court are Plaintiff's motions for entry of final default judgment against the four remaining Defendants in the case, and for attorney's fees. Plaintiff Terry Waller brought this action for damages alleging that Defendants sexually harassed Plaintiff in violation of the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010, *et. seq.* Plaintiff initially filed this action in state court against seven defendants: Blast Fitness Group, LLC, Blast Fitness Group Personal Training, LLC, and Blast Fitness Acquisition, LLC (collectively, "Blast Fitness"); two other related entities; Edgar Thompson; and Annette Miller. Plaintiff brought two claims under the MHRA (hostile work environment and quid pro quo harassment) against all Defendants; and a claim of negligent infliction of emotional distress against Thompson only.

Plaintiff alleges that on February 12, 2013, Thompson, a regional manager for Blast Fitness, interviewed Plaintiff for a position he had applied for and offered Plaintiff the job

"on the spot." Shortly thereafter, Thompson began contacting Plaintiff on his cell phone via text messages, repeatedly invited Plaintiff to spend time with him outside of work, and emphasized his authority as a regional manager. On February 21, 2013, during an in-person conversation at Blast Fitness, Thompson told Plaintiff that he would get the job only in return for sexual favors. Plaintiff did not accede and was not hired. On February 27, 2013, Plaintiff filed a charge of sexual harassment and retaliation with the Missouri Human Rights Commission and the Equal Employment Opportunity Commission.

Defendants removed the case to this Court on April 6, 2015, based on diversity jurisdiction. Plaintiff eventually dismissed Miller and the two other related entities referred to above, as well as the negligent infliction of emotional distress claim against Thompson. On June 10, 2016, the Clerk of Court entered default against Blast Fitness and Thompson as to liability on the remaining claims. By Memorandum and Order dated June 10, 2016, the Court found Blast Fitness and Thompson liable on Plaintiff's quid pro quo claim. The Court held that Plaintiff's hostile work environment claim failed because Plaintiff never commenced working for Blast Fitness. The Court set a hearing on damages that was later vacated as the matter was stayed on June 22, 2016, due to the bankruptcy of Blast Fitness Group, LLC. The stay was lifted on March 13, 2017, and a new hearing on damages was set for June 19, 2017.

At the June 19, 2017 hearing, Plaintiff, his fiancé, and his mother testified. Defendants did not appear in person or through counsel. Plaintiff testified about his lifelong struggle with asthma and how an exercise regimen eventually allowed him to live without inhalers and medication. He testified that he aspired to be a personal trainer, a dream he hoped would be furthered by a job with Blast Fitness, but after being harassed by

2

Thompson, Plaintiff stopped exercising and began suffering asthmatic symptoms once again, which culminated in a hospital stay, his first hospital stay since he began exercising as a teenager. Plaintiff testified to isolating himself socially, mood changes, other emotional suffering including depression and anxiety, and to seeking professional treatment for these issues.

Plaintiff also testified that he experienced financial troubles after the incident, including a period of homelessness caused by an inability to maintain steady employment. Plaintiff testified that he applied to numerous jobs, but that he struggled with nervousness during job interviews, particularly when he was interviewed by men. Plaintiff testified that this difficulty with job interviews was a result of being harassed by Thompson. During the hearing, Plaintiff admitted a spreadsheet into evidence detailing the jobs he has held since February of 2013 and the wages he earned. Plaintiff testified that this spreadsheet accurately reported his wage and employment history since being harassed by Thompson. His wage loss was calculated as the difference between the wages he would have earned had he been employed by Blast Fitness and the wages he actually earned. He also included gym fees, which he would not have paid had he been employed by Blast Fitness, in his economic damages calculation.

Plaintiff testified that he is now employed. Plaintiff also admitted into evidence before and after photographs showing considerable physical changes as a result of not exercising, documents evidencing his psychotherapy treatment, and spreadsheets showing the hours billed and costs incurred by his attorneys in support of Plaintiff's motion for attorney's fees and costs. At the hearing, Plaintiff's fiancé and mother offered corroborating testimony.

3

Plaintiff filed his proposed judgment on June 22, 2017, and an amended proposed judgment on July 25, 2017, wherein Plaintiff requested total judgment of $2.5 million in damages (economic damages in the amount of $28,435.72, compensatory damages for pain and suffering of approximately $1 million, and $1.5 million in punitive damages), $94,728.40 in attorney's fees, and $2,338.63 in costs, along with post-judgment interest assessed at 9.0% pursuant to Mo. Rev. Stat. § 408.040.

## DISCUSSION

### Damages

Plaintiff has provided sufficient evidence in support of his economic damages, and the Court accordingly awards Plaintiff the $28,435.72 he requested for these damages. As to compensatory damages for emotional distress, "actual damages recoverable under the MHRA may include awards for emotional distress and humiliation." *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 54 (Mo. Ct. App. 2016). Emotional distress damages may be "established by testimony or inferred from the circumstances." *Id.* at 55. "Intangible damages, such as pain, suffering, embarrassment, emotional distress, and humiliation do not lend themselves to precise calculation." *Van Den Berk v. Mo. Comm'n on Human Rights*, 26 S.W.3d 406, 413 (Mo. Ct. App. 2000). "Each case requires individualized contemplation and consideration by the trier of fact." *Id.* at 414. "Fair and reasonable compensation is the ultimate goal in awarding damages." *Id.*

Here, the Court finds, based on the evidence including Plaintiff's testimony, that he is entitled to compensatory damages for pain and suffering, but the Court cannot sustain Plaintiff's request for approximately $1 million in such damages. Upon review of the record and analogous MHRA cases, the Court will award Plaintiff an additional $45,000 in

4

compensatory damages for emotional distress. *See, e.g.*, *Diaz*, 484 S.W. 3d at 87 (affirming award of $75,000 in emotional distress damages where workplace verbal and physical sexual harassment lasted almost one year).

Punitive damages are available under the MHRA if the plaintiff "adduce[s] clear and convincing proof of a culpable mental state, either from a wanton, willful, or outrageous act, or from reckless disregard for an act's consequences such that an evil motive may be inferred." *Diaz v. Autozoners*, LLC, 484 S.W.3d 64, 77 (Mo. Ct. App. 2015) (citation omitted). Here, the Court concludes that Thompson's conduct was quite egregious and that he acted with a reckless disregard for the negative consequences his conduct would have upon Plaintiff. Upon review of punitive damages awards in comparative cases, the Court will award Plaintiff an additional $75,000 in punitive damages.

Blast Fitness, as Thompson's employer, is vicariously liable for the above damages. *See id*. at 76-77; *Leeper v. Scorpio Supply IV*, 351 S.W.3d 784, 793 (Mo. Ct. App. 2011).

> If the harassed employee suffers a tangible employment action resulting from supervisory harassment, the tangible employment action taken by the supervisor becomes for [MHRA] purposes the act of the employer, and the employer is liable for the discriminatory conduct. If, on the other hand, no tangible employment action occurs (for example, when an employee is subjected to a hostile work environment), the employer is entitled to an affirmative defense to liability. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise.
>
> \* \* \*
>
> When an employer's liability is vicarious, the employer may raise a 'good

faith' defense to punitive damages by proving that the discriminatory employment decisions of managerial agents are contrary to the employer's good-faith efforts to comply with [the MHRA].

*Diaz*, 484 S.W.3d at 76-77 (citations omitted).

Here, Blast Fitness has not established an affirmative defense to liability or a good faith defense with respect to punitive damages. Accordingly, damages will be assessed jointly and severally against Blast Fitness and Thompson.

**Attorney's Fees**

Counsel for Plaintiff seeks $94,728.40 in attorney's fees and an additional $2,338.63 in costs. The MHRA states that a court "may award court costs and reasonable attorney fees to the prevailing party." Mo. Rev. Stat. § 213.111. Missouri courts have set out seven factors to guide courts in determining what fees are reasonable under the MHRA:

> (1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; (2) the number of hours reasonably expended on the litigation; (3) the nature and character of the services rendered; (4) the degree of professional ability required; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) the vigor of the opposition.

*Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 523 (Mo. 2009) (citing, in addition to the seven factors above, *Hensley v. Eckerhart*, 461 U.S. 424, 429-30 n. 3 (1983), which sets out 12 factors for courts to consider when awarding fees in federal civil rights cases). The degree of success obtained is the most important of these factors. *Id.* The trial court is presumed to know "the character of the services rendered in duration, zeal, and ability." *Ferguson v. Curators of Lincoln Univ.*, 498 S.W.3d 481, 498 (Mo. Ct. App. 2016) (citation omitted). Because the trial court is considered an expert under Missouri law for setting

attorney's fees, it may "fix the amount of attorneys' fees without the aid of evidence." *Id.*

The starting point for determining fees is the lodestar: the hourly rate of the attorneys and staff working the case multiplied by the number of hours expended in the representation. *Alhalabi v. Mo. Dep't. of Nat. Resources*, 300 S.W.3d 518, 531 n. 6 (Mo. Ct. App. 2009). According to Plaintiff's filings, attorney Gretchen Myers worked 91.35 hours at an hourly rate of $450 through September 1, 2016, at which point she raised her rate to $575 per hour and worked an additional 4.55 hours. Attorney Jennifer Matthew worked 94.75 hours at a rate of $377 per hour. Paralegal fees were assessed at a rate of $150 per hour for 100.1 hours worked. Counsel provided the Court with data showing the average rates charged by attorneys in the St. Louis, Missouri, area, and Myers' and Matthew's rates are within the range. As to the number of hours recorded, the reasonableness of many of the billing entries is difficult to assess. Rather than scrutinize each billing line item, the Court will consider the other factors in assessing the reasonableness of the overall amount sought. *See Trout v. State*, 269 S.W.3d 484, 489 (Mo. Ct. App. 2008) (explaining that the trial court may attempt to identify specific hours that should be eliminated, or it may also choose to assess an award based on the relevant factors).

Though civil rights cases under anti-discrimination statutes deal with important policy considerations, this case did not present particularly difficult legal or procedural issues for counsel to address, and, as Defendants have not appeared through counsel or *pro se* for approximately one year during the pendency of the case, there has been little opposition for Plaintiff to contend with. Upon review of the entire record, the Court reduces the fees requested by 50% to $47,364.20. *See Quigley v. Winter*, 598 F.3d 938,

958 (8th Cir. 2010) (reducing overall fees by one-third in part because "the complexity of the issues in this case simply did not warrant the requested amount of 'lawyering' ") (cited with approval in *Banks v. Slay*, 875 F.3d 876, 882 (8th Cir. 2017). This amount is not inconsistent with fee awards in other MHRA cases. *See, e.g.*, *Betton v. St. Louis Cty.*, No. 4:05CV01455 JCH, 2010 WL 2025333, at * (E.D. Mo. May 19, 2010) (awarding approximately $189,000 in attorney's fees in an MHRA for a case lasting four years and culminating in a seven-day jury trial and a verdict for the plaintiffs of approximately $30,000 in damages and approximately $50,000 in punitive damages). The full amount of costs, $2,338.63, will be awarded as requested.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's motion for default judgment is **GRANTED** in the amount of $148,435.72 in damages ($28,435.72 + $45,000 in compensatory damages and $75,000 in punitive damages) against Defendants Edgar Thompson, Blast Fitness Group, LLC, Blast Fitness Group Personal Training, LLC, and Blast Fitness Acquisition, LLC.

**IT IS FURTHER ORDERED** that attorney's fees and costs are awarded in the amount of $47,364.20; and costs are awarded in the amount of $2,338.63.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of December, 2017